USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 3/13/2019

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------X
ABC,

                Petitioners,

         -against-

XYZ Corp. *et al.*,

               Respondents.
------------------------------------------------------X

**REPORT & RECOMMENDATION**

**18-CV-11653 (JGK) (JLC)**

**FILED UNDER SEAL**

**JAMES L. COTT, United States Magistrate Judge.**

**To the Honorable John G. Koeltl, United States District Judge:**

    The parties in the above-captioned personal injury action seek the Court's approval of a structured settlement on behalf of three infant petitioners, including the award of costs and attorneys' fees to petitioners' counsel, and to maintain the action under seal. For the reasons stated below, I recommend that the settlement be approved in full, but that the action be unsealed and all pleadings and related documents be filed on the docket in redacted form.

### I. BACKGROUND

**A. Facts**

    This lawsuit arises from an event that occurred on February 27, 2017, when petitioner SD and her family were staying at respondents' hotel located in New York City. Verified Petition ("Petition") ¶¶ 4–5.[1] On that day, SD, a 22-month-old

---

[1] The Court refers to the infant petitioners by their initials, as did petitioners' counsel in his supplemental declaration in support of the application for settlement approval.

1

infant, was found in the family's hotel room holding a hypodermic needle; SD had likely sustained a puncture wound to her lower lip. *Id.* ¶ 6. The needle is alleged not to have come from any of SD's family members, but was believed to have been left in the room by an unknown person. *Id.* ¶ 7.

SD was taken to a hospital where she received prophylactic treatment for HIV prevention. *Id.* ¶ 9. When the family returned to their home state, SD continued receiving treatment. *Id.* ¶¶ 10–11. Soon after, SD and her two infant siblings AD and LD were all tested for HIV and other viruses. *Id.* ¶ 12. All three were cleared and no further treatment was advised. *Id.* ¶¶ 13–16.

On March 17, 2017, the mother of SD, AD, and LD retained a New York-based law firm, Molod Spitz & DeSantis, P.C., to take "all legal steps against any person or corporation through trial and appeal." Supplemental Declaration in Support dated February 5, 2019 ("Supp. Decl.") at 2. The firm was retained on a contingency fee basis and would receive one-third of any amount recovered. *Id.*[2] On July 23, 2018, respondents offered to settle the case for a total sum of $130,000, which petitioners accepted. Petition ¶ 23. The proposed distribution of the settlement proceeds is as follows: 1) $50,848.52 in annuities to SD; 2) $16,949.51 in annuities to LD; 3) $16,949.51 in annuities to AD; 4) $1,555.48 in medical expenses; and 5) $43,696.98 in attorneys' fees and disbursements. *Id.* ¶ 25.

---

[2] The firm further agreed to share one-third of the total attorneys' fees with the introducing law firm in petitioners' home state. Supp. Decl. at 2.

## B. Procedural History

On December 13, 2018, petitioners filed a verified petition in this District to approve the structured settlement and a proposed infant compromise order, as well as a motion to seal the proceedings.[3] The Court preliminarily granted the motion to seal "absent further order of this Court." Order to Seal, dated December 13, 2018. On December 26, 2018, this case was referred to me for a report and recommendation. On January 15, 2019, I directed petitioners to submit further briefing on the fairness of the settlement, to notify and serve respondents, and to provide legal authority for keeping the case under seal. On February 4, 2019, petitioners submitted a supplemental declaration. On February 6, 2019, respondents provided a declaration in support of the petition.[4]

## II. DISCUSSION

### A. Legal Standards

#### 1. Infant Compromise Order

In this District, Local Civil Rule 83.2(a)(1) requires that "[a]n action by or on behalf of an infant or incompetent shall not be settled or compromised . . . without

---

[3] Petitioners' counsel had previously obtained a case number in this District (18-CV-4171) against respondents on May 9, 2018. However, "this action was allowed to lapse and was administratively closed." Attorney Affirmation ¶ 21. In his supplemental declaration, petitioners' counsel contended that the "matter was strategically allowed to lapse because it was not on the merits and propelled negotiations." Supp. Decl. at 6. When the parties reached an impasse in May 2018, the case number was used to "keep up pressure towards resolution." *Id.*

[4] These submissions were all sent to the Court by email, and the Court will have them filed under seal until further order of the Court.

leave of the Court embodied in an order, judgment or decree...." To approve a settlement involving infants, a court must determine "whether: (1) the best interests of the infant are protected by the terms and conditions of the proposed settlement; and (2) the proposed settlement, including any legal fees and expenses to be paid, as part of the proposal, are fair and reasonable." *D. v. City of New York*, 14-CV-7131 (JGK) (HBP), 2016 WL 4734592, at *2 (S.D.N.Y. Aug. 22, 2016) (internal citations and quotations omitted), *adopted by*, 2016 WL 4735365 (S.D.N.Y. Sept. 9, 2016).

### 2. Sealing Order

There is a "'common law right of public access to judicial documents,' which is 'firmly rooted in our nation's history' and which creates a rebuttable 'presumption' in favor of public access to judicial documents." *Scott v. Graham*, 16-CV-2372 (KPF) (JLC), 2016 WL 6804999, at *1 (S.D.N.Y. Nov. 17, 2016) (quoting *Lugosch v. Pyramid Co.*, 435 F.3d 110, 119 (2d Cir. 2006)). However, a court may seal judicial documents if "closure is essential to preserve higher values and closure is narrowly tailored to serve that interest." *Lugosch*, 435 F.3d at 119.

## B. Analysis

### 1. Infant Compromise Order

#### a. The Infants' Best Interests Are Protected by the Settlement

In assessing the first prong of the analysis, "a court must give 'significant deference' to the natural parent's or guardian's belief that the proposed settlement is in the best interest of the infant plaintiff." *D.L.G. ex rel. Gomez v. United States*,

12-CV-7526 (RA), 2015 WL 6736163, at *7 (S.D.N.Y. Nov. 3, 2015) (quoting *J.A. v. Ja-Ru, Inc.*, 08-CV-3640 (DAB) (KNF), 2011 WL 990167 (S.D.N.Y. Mar. 15, 2011)). A court may also consider the method of disbursement to the infant. *See id.* (plaintiffs placed money in interest-bearing account "for sole use and benefit" of infant).

In this case, SD, AD, and LD's natural parents have approved the settlement. Petition ¶¶ 24, 27, 32. Additionally, the parents have waived any claims on their own behalf; the settlement proceeds are for the sole use and benefit of the infants. *Id.* ¶¶ 25(f), 33; Supp. Decl. at 3; *see D.L.G. ex rel. Gomez*, 2015 WL 6736163, at *7. Furthermore, the settlement is structured in the form of an annuity contract executed by a qualified insurer, funded by respondents, which will provide periodic payments to the infants as they mature. Petition ¶¶ 25(f), 26; *see* N.Y. C.P.L.R. § 1206(c) (court "may order that a structured settlement agreement be executed, which shall include any settlement whose terms contain provisions for the payment of funds on an installment basis, provided that with respect to future installment payments, the court may order that each party liable for such payments shall fund such payments, in an amount necessary to assure the future payments, in the form of an annuity contract executed by a qualified insurer"). Because the annuities will grow over time, SD is guaranteed total payments of $110,922.09 by year 2042, LD is guaranteed total payments of $25,322.15 by year 2032, and AD is guaranteed total payments of $29,562.90 by year 2036. *Id.* ¶ 25(f). Accordingly, I find that the settlement protects the infants' best interests.

### b. The Settlement Is Fair and Reasonable

To determine whether a settlement is fair and reasonable, a court compares "the terms of the compromise with the likely reward of litigation." *Martegani v. Cirrus Design Corp.*, 687 F. Supp. 2d 373, 377 (S.D.N.Y. 2010) (quoting *Neilson v. Colgate–Palmolive Co.*, 199 F.3d 642, 654 (2d Cir. 1999)). Courts must "form an educated estimate of the complexity, expense, and likely duration of such litigation . . . and all other factors relevant to a full and fair assessment of the wisdom of the proposed compromise." *Mateo v. United States*, 06-CV-2647 (KNF), 2008 WL 3166974, at *2 (S.D.N.Y. Aug. 6, 2008) (quoting *Newman v. Stein*, 464 F.2d 689, 692 (2d Cir. 1972)).

There is a strong presumption that a settlement is fair and reasonable where "'(i) the settlement is not collusive but was reached after arm's length negotiation; (ii) the proponents have counsel experienced in similar cases; [and] (iii) there has been sufficient discovery to enable counsel to act intelligently.'" *Bland v. City of New York*, 14-CV-5398 (AT) (DCF), 2016 WL 3443584, at *2 (S.D.N.Y. June 1, 2016) (quoting *Orlandi ex rel. Colon v. Navistar Leasing Co.*, 09-CV-4855 (THK), 2011 WL 3874870, at *2 (S.D.N.Y. Sept. 2, 2011)). Courts may also consider other factors, such as the risk of establishing damages. *D. v. City of New York*, 2016 WL 4734592, at *3 (citing *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 463 (2d Cir. 1974)).

### i. The Settlement Was Reached after Arm's-Length Negotiations

Petitioners' counsel submitted an affirmation stating that he "[has] neither directly nor indirectly become concerned in the settlement of this action at the

6

instance of a party or person opposing, or with interest adverse to the infants, nor received nor will receive any compensation from such a party." Attorney Affirmation ¶ 33; *see Campbell v. City of New York*, 15-CV-2088 (PAE), 2015 WL 7019831, at *3 (S.D.N.Y. Nov. 10, 2015); *see also* N.Y. C.P.L.R. § 1208(b) (requiring such language in affidavit supporting proposed infant compromise order). Nothing in the record suggests that the settlement agreement was not made at arm's length.

### ii. Petitioners' Counsel Is Experienced in Medical Malpractice and Tort Cases

Petitioners' counsel has practiced law for 31 years, has "personally handled approximately fifteen (15) associated medical malpractice and tort cases involving infections of various types," and has "particular experience and knowledge regarding HIV-AIDS exposure. . . ." Supp. Decl. at 4. He has stated his familiarity both with tort law and with "viral transmission, cross-contamination, viral testing, anti-viral protocols, protocol side-effects, risk analysis and associated issues." *Id.* at 5. As such, counsel is experienced and able to negotiate a settlement involving significant medical risks.

### iii. Sufficient Research Was Conducted

Because this case was resolved prior to litigation, petitioners' counsel did not conduct any discovery as part of a lawsuit. However, in his supplemental declaration, petitioners' counsel stated that he spent 89.8 hours on the case, which included reviewing the infants' medical records, consulting with medical experts, researching the hotel and any history of prior incidents, participating in settlement negotiations with respondents, conducting legal research on similar cases, and

7

communicating with petitioners' parents and local counsel. Supp. Decl., Ex. B. The record thus suggests that petitioners' counsel had sufficient information to conduct meaningful settlement negotiations.

      **iv.**    **The Risk of Establishing Damages Was High**

In addition, the difficulty of establishing damages in this case would have presented a high bar to recovery. All three infants have tested negative for HIV or other diseases (*see* Supp. Decl. at 10), and thus do not have an action based on physical damage beyond the initial needle stick and anti-viral treatment. Petitioners would also have difficulty pursuing damages based on the negligent infliction of emotional distress. As petitioners' counsel notes: "[M]any plaintiffs are unable to prove physical manifestations of bodily contamination, [and] New York courts routinely grant summary judgment for defendants on emotional distress claims based on plaintiffs' fear of getting . . . AIDS." *Id.* at 9 (citing *In re Methyl Tertiary Butyl Ether (MTBE) Prod. Liab. Litig.*, 379 F. Supp. 2d 348, 432 (S.D.N.Y. 2005)).

Furthermore, under New York law, in order to state a cause of action, "a claimant who has not tested positive for HIV must establish that due to the negligence of another party, the claimant was exposed to HIV through a scientifically-accepted method of transmission and <u>the source of the allegedly transmitted blood or fluid was HIV-positive</u>." *Siegrist v. State*, 868 N.Y.S.2d 670, 671 (2d Dep't 2008) (emphasis added) (citing *Ornstein v. New York City Health & Hosps. Corp.*, 10 N.Y.3d 1, 6 (2008)). In this case, unlike in *Ornstein*, petitioners

8

have not contended that the needle contained blood or fluid that was HIV-positive. Petitioners' counsel has stated that testing the needle itself, because of the chance of "false positives[,] . . . is simply not a criteria in deciding to prescribe anti-HIV protocols for those who have been punctured." Supp. Decl. at 10. Because petitioners would not have been able to establish that the needle transmitted HIV-positive blood or fluid to SD, they would have had difficulty establishing a cause of action (or damages) for negligent infliction of emotional distress.

Even if petitioners could demonstrate that the needle tested HIV-positive, SD, who sustained the injury, was 22 months old and "could not articulate any fear of disease or needles because of the accident." Supp. Decl. at 10. Because the infants sustained no permanent physical harm, and there is no evidence that any of the infants have sustained emotional or psychological harm, petitioners would likely have faced difficulties establishing damages.

Accordingly, after comparing "the terms of the compromise with the likely reward of litigation," I find that the settlement is fair and reasonable. *Martegani*, 687 F. Supp. 2d at 377.

### c. The Attorneys' Fees Sought Are Reasonable

"When approving an infant's compromise, the court [also] has an obligation to approve the reasonableness of attorneys' fees." *D. v. City of New York*, 2016 WL 4734592, at *5 (quoting *Sanchez v. MTV Networks*, 10-CV-7854 (TPG), 2012 WL 2094047, at *2 (S.D.N.Y. June 11, 2012)). "[C]ontingency-fee agreements are to be treated by the Court as 'advisory only,' . . . and the contract between an infant's

9

attorney and legal guardian is only 'one of the elements which the judge may take into consideration in fixing reasonable compensation.'" *Campbell*, 2015 WL 7019831, at *4 (quoting *White v. DaimlerChrysler Corp.*, 871 N.Y.S.2d 170, 173 (2d Dep't 2008)). "In assessing whether the requested attorneys' fee is reasonable, the Court examines the contemporaneous time records, length of litigation, complexity of the case, resources needed to prove the case, [and] expertise of the lawyer...." *D.L.G. ex rel. Gomez*, 2015 WL 6736163, at *9 (citing *Orlander v. McKnight*, 12-CV-4745 (HBP), 2013 WL 4400537, at *7 (S.D.N.Y. Aug. 15, 2013)).

In this case, the proposed settlement allocates $43,151.52 to petitioners' counsel in fees. Petition ¶ 25. This amount is approximately 33.2% of the total settlement fund; petitioners had agreed that counsel would receive one-third of the amount recovered when the firm was retained. *Id.* ¶ 22. Petitioners' counsel also submitted contemporaneous time records with a detailed list of services performed by the firm, totaling 98 hours. Supp. Decl., Ex. B. Given the amount of work undertaken by counsel, the sensitive nature of the incident, counsel's experience with HIV cases, and the resulting favorable settlement for petitioners, the fee arrangement is fair and reasonable. Moreover, one-third contingency fee arrangements for infant compromise actions are "routinely approved" in this District. *D. v. City of New York*, 2016 WL 4734592, at *7 (citing *Bland*, 2016 WL 3443584, at *5). Accordingly, I recommend approving the attorneys' fees sought in this case.

## 2. Motion to Seal

At the outset of the case, petitioners' counsel requested that the petition be sealed "because the claims of the infant petitioners, and their mother/natural guardian, involves potential exposure to the HIV virus." Declaration in Support of Motion to Seal ¶ 4. On January 15, 2019, I requested additional legal authority from petitioners to support their application to maintain the action under seal, and presented the option of "redacting the infants' names and financial information," with the filings otherwise made public.

In their supplemental submissions, petitioners have renewed their request to keep the case entirely under seal. Petitioners rightly observe that "Civil Rights laws have been enacted because of the HIV/AIDS stigma . . . [to] protect individuals with [HIV or AIDS] from discrimination on the basis of their disability." Supp. Decl. at 13. However, as petitioners themselves have acknowledged, the infants have been cleared of HIV and AIDS. Petition ¶¶ 13–16. Moreover, petitioners have not explained why redactions limiting the infants' identities to initials would not suffice to protect their privacy interests. Indeed, in the case discussed most extensively by petitioners (*see* Supp. Decl. at 14–15), *Hirschfeld v. Stone,* the court granted a "limited sealing order . . . . [Plaintiffs] only request that documents which reveal their identities be sealed. <u>The public will still have access to information in this action via documents that reveal plaintiffs only by their initials</u>." 193 F.R.D. 175, 193 (S.D.N.Y. 2000) (emphasis added). As in *Hirschfeld,* a limited sealing

order that redacts petitioners' names and other identifying information in public filings would protect the privacy interests of the infants.

While petitioners rely on several other cases to support their motion to seal, none supports their request for a total sealing. In *Combier v. Portelos*, for example, the court denied defendant's request to unseal specific filings. 17-CV-2239 (MKB) (RLM), 2018 WL 4678577, at *8 (E.D.N.Y. Sept. 29, 2018). However, the entire case was not sealed. The court sealed defendant's "voluminous, and at times irrelevant" filings that contained allegedly false information about plaintiff's non-party husband and irrelevant details about her physical disability. *Id.* at *9. In this case, none of the filings is voluminous, false, irrelevant, or filed maliciously, and thus require sealing for those reasons.

Petitioners also attempt to distinguish this case from *Savarese v. Cirrus Design Corp.*, 09-CV-1911 (JGK), 2010 WL 815027, at *1 (S.D.N.Y. Mar. 9, 2010), in which the court found there had been an insufficient showing that an infant compromise hearing, report and recommendation, and order need be filed under seal, and *Doe v. Deer Mountain Day Camp, Inc.*, 682 F. Supp. 2d 324, 331 (S.D.N.Y. 2010), in which only the last name of an HIV-positive child was redacted. They note that this petition was "not litigated" and contend that "[t]he public has no interest in the case at bar and no claim against the respondents exists beyond the accident at issue." Supp. Decl. at 16–17. Petitioners have not cited to any authority to support sealing this case based on these distinctions. Regardless of whether this action was litigated, the Court will issue a judicial document in the form of "an

order, judgment or decree" under Local Civil Rule 83.2(a)(1), which presumes a public right to access. Furthermore, it is plainly in the public interest for the incident alleged in the petition and its location, as well as the amount of the settlement, to be publicly available information. *See, e.g., Camac v. Long Beach City Sch. Dist.*, 09-CV-5309 (MLB) (GRB), 2012 WL 3277228, at *3, n.3 (E.D.N.Y. July 25, 2012) (rejecting plaintiffs' request to keep proposed settlement amount confidential as plaintiffs' interests outweighed "both by the public right to access and by the interests in providing a fulsome exploration of the proposed infant compromise"), *adopted by*, 2013 WL 991355 (E.D.N.Y. Mar. 13, 2013); *Joji v. Kuwait Airways Corp.*, 08-CV-4339 (JO), 2010 WL 1286362, at *1 (E.D.N.Y. Apr. 2, 2010) (rejecting attempt to seal settlement proceedings of an infant compromise).

Respondents have also filed a declaration in support of petitioners' motion to maintain all of the files in the case under seal. They contend that this case "should remain under seal due to the nature of the allegations of H.I.V. exposure to infants, [as] well as potential deleterious ramifications to respondents. The hotel, its patrons, and its guests should not be stigmatized by allegations of exposure to H.I.V. infection because there is no evidence of culpability or actual H.I.V. exposure." Declaration of John L.A. Lyddane dated February 6, 2019, ¶ 6. However, respondents have not cited to any authority that the public right to access to judicial documents can be overcome simply because of "potential deleterious

13

ramifications" to a party's business.[5] In addition, petitioners themselves acknowledge that the infants have been cleared of HIV and that the "risk of establishing liability was substantial." Supp. Decl. at 8. No finding has been made that there was "evidence of culpability or actual H.I.V. exposure," so respondents' concern to that end is unfounded.

While "[o]rdinarily, settlements of civil lawsuits are private arrangements between the parties . . . [and] the court 'normally plays no role whatever, standing 'indifferent' to the terms the parties have agreed to,' [i]n certain types of cases . . . [such as an infant compromise order], judicial scrutiny of a proposed settlement is required." *Geltzer v. Andersen Worldwide, S.C.*, 05-CV-3339 (GEL), 2007 WL 273526, at *1 (S.D.N.Y. Jan. 30, 2007) (quoting *Janus Films, Inc. v. Miller*, 801 F.2d 578, 582 (2d Cir. 1986)). In such cases, there is a "presumption of access" to the judicial proceedings. *Id.* at *2 (citing *United States v. Amodeo*, 71 F.3d 1044, 1048 (2d. Cir. 1995)); *see also Agence France Presse v. Morel*, 10-CV-2730 (AJN), 2014 WL 5568562, at *2 (S.D.N.Y. Nov. 3, 2014) ("Information on which a court must rely to determine the motion before it—such as the settlement amounts contained in the Defendants' memorandum . . . is given a strong presumption of public access."). This presumption is "not easily overcome," and respondents have not demonstrated a sufficient basis to justify sealing all of the filings in this case. *Files v. Federated Payment Sys. USA, Inc.*, 11-CV-3437 (JS) (GRB), 2013 WL 1874602, at *3 (E.D.N.Y.

---

[5] Nor have they cited any authority in support of their request that the financial terms of the infant compromise order remain sealed.

14

Apr. 2, 2013). In addition, unlike petitioners, respondents have no medical privacy or protection of minors claim that would justify a redaction of the business's names.

Accordingly, I recommend that the parties be directed to file redacted versions of all submissions in this case. The redactions should be limited to the infants' and parents' names, which should be listed by initials only, and any references to birth dates, addresses, and any other information that could lead to identification of the infant petitioners.

### III. CONCLUSION

For the reasons set forth above, I recommend that the structured settlement be approved in its entirety. I further recommend that the case be unsealed and the parties file redacted versions of all of the documents in the case.

### PROCEDURE FOR FILING OBJECTIONS TO THIS REPORT AND RECOMMENDATION

Given that all other filings have been made under seal, the Court will also file its report and recommendation under seal and email a copy to counsel for petitioners and respondents. Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from service of this Report to file written objections. *See also* Fed. R. Civ. P. 6. Such objections, and any responses to such objections, shall be filed under seal with the Clerk of Court, with courtesy copies delivered to the chambers of the Honorable John G. Koeltl and to the chambers of the undersigned, United States Courthouse, 500 Pearl Street, New York, New York, 10007. Any requests for an extension of time for filing objections must be directed to Judge Koeltl.

**FAILURE TO FILE OBJECTIONS WITHIN FOURTEEN (14) DAYS WILL RESULT IN A WAIVER OF OBJECTIONS AND WILL PRECLUDE APPELLATE REVIEW.** 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72. *See Thomas v. Arn*, 474 U.S. 140 (1985); *Wagner & Wagner, LLP v. Atkinson, Haskins, Nellis, Brittingham, Gladd & Carwile, P.C.*, 596 F.3d 84, 92 (2d Cir. 2010).

Dated: March 13, 2019
    New York, New York

JAMES L. COTT
United States Magistrate Judge